UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL DAVID TYLER,　　　　　　　　Civil Action No. 13-10399

　　　　Plaintiff,　　　　　　　　　　　　　HON. AVERN COHN
　　　　　　　　　　　　　　　　　　　　　U.S. District Judge
v.　　　　　　　　　　　　　　　　　　　HON. R. STEVEN WHALEN
　　　　　　　　　　　　　　　　　　　　　U.S. Magistrate Judge
COMMISSIONER OF SOCIAL
SECURITY,

　　　　Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Michael David Tyler ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below I recommend that Defendant's motion for summary judgment be GRANTED and that Plaintiff's motion for summary judgment be DENIED.

## PROCEDURAL HISTORY

On November 27, 2009, Plaintiff filed an application for DIB, alleging disability as of July 20, 2009 (Tr. 156-162). After the initial denial of the claim, he requested an

administrative hearing, held on July 15, 2011 in Detroit, Michigan before Administrative Law Judge ("ALJ") Gregory Holiday (Tr. 49). Plaintiff, represented by attorney Karl Bender, testified (Tr. 52-75), as did Vocational Expert ("VE") Diane Regan (Tr. 75-81). On August 31, 2011, ALJ Holiday found Plaintiff not disabled (Tr. 43). On November 27, 2012, the Appeals Council denied review (Tr. 1-6). Plaintiff filed for judicial review of the Commissioner's decision on January 31, 2013.

## BACKGROUND FACTS

Plaintiff, born August 9, 1966 was 45 when the ALJ issued his decision (Tr. 43, 156). He completed high school (special education) and worked previously as a mason (Tr. 89, 195). His application for benefits alleges disability as a result of spinal fusion surgery and bipolar disorder (Tr. 188).

### A. Plaintiff's Testimony

Plaintiff offered the following testimony:

His current weight of 210 was 15 pounds above his usual weight due to a recently diagnosed thyroid condition (Tr. 53). He was disabled as of July 20, 2009 because of a workplace back injury (Tr. 53). He underwent back surgery but had not returned to work (Tr. 54). He was currently collecting unemployment benefits (Tr. 54). He received a Workers' Compensation settlement the previous November (Tr. 55). He attended Alcoholic Anonymous ("AA") meetings and "helped out" with AA on a limited basis (Tr. 54).

He experienced radiculopathy of the left leg and foot (Tr. 55-56). He took a diuretic for swelling of the hands and feet (Tr. 56). He was currently prescribed Depakote and

Seroquel for psychological conditions and Suboxone for pain (Tr. 57). He held a current driver's license and was able to drive (Tr. 58). He was unable to stand or sit for more than 30 minutes or walk for more than 100 yards due to back pain (Tr. 58-61). He relieved back pain with hot and cold packs (Tr. 59). He was able to bend "a little" but was precluded from all kneeling (Tr. 61).

Plaintiff had a Facebook account and was able to text from his cell phone (Tr. 62). He currently lived with his wife (Tr. 63). He was able to perform some cooking (Tr. 63). He currently smoked a pack of cigarettes a day, but noted that he was no longer abusing narcotics (Tr. 63-64). He used marijuana one month before the hearing because it helped relieve back pain (Tr. 65). He declined the continued use of marijuana because he did not like "being high" (Tr. 65). He used cocaine in his 20s but denied ever using heroin (Tr. 65). He experienced mild hearing loss and ringing in his ears (Tr. 65-66).

In response to questioning by his attorney, Plaintiff testified that he had been placed in special education for both learning and psychological problems (Tr. 67). On a scale of one to ten, Plaintiff experienced level "six" pain constantly (Tr. 67). He was unable to lift more than 10 pounds (Tr. 67). He spent most of the day sitting (Tr 68). He attempted to maintain good posture (Tr. 68). On bad days (occurring two or three times a week) he experienced level "eight" pain and was confined to his bed for hours at a time (Tr. 68). He was unable to perform any work or engage in his former hobbies of hunting and fishing (Tr. 68-69). He underwent three surgeries, noting that his condition had been exacerbated by a staph infection (Tr. 69). He currently received psychological therapy and medication reviews for

symptoms of depression and bipolar disorder (Tr. 69-70). He was depressed by his physical condition and financial limitations (Tr. 70). He experienced concentrational and mood problems, noting that he was short-tempered (Tr. 70-71). He had experienced problems interacting with others even before his back surgery, but the problems had been exacerbated by his current physical condition (Tr. 72).

He avoided old friends, noting that they "used [drugs] together" (Tr. 73). He was determined to stay drug free and attended AA meetings five times a week (Tr. 73). His problems interacting with others precluded all work (Tr. 73-74). He lost his house due to drug use and was now living in an apartment (Tr. 74). He noted that he re-injured his back the previous winter while lifting sand bags out of his truck (Tr. 74).

    B.    Medical Evidence[1]

### 1. Treating Records

February, 2009 treating notes by Richard A. Flanagan, Jr., M.D. state that Plaintiff underwent an anterior bowel resection and appendectomy for diverticulitis the previous month (Tr. 600). Dr Flanagan opined that Plaintiff did not require further treatment (Tr. 600). In July, 2009, treating notes by Salvi Ashok, M.D. state that Plaintiff sustained injuries when a "bob cat" machine hit him in the lower back (Tr. 257). Dr. Ashok noted a history of alcohol abuse (Tr. 259). An initial x-ray of the lumbar spine showed no abnormalities (Tr. 605). An MRI of the lumbar spine showed "multiple extradural defects

---

[1] Records significantly predating the claim for benefits, while reviewed in full, have not been included in the present discussion.

(Tr. 370-371). Later, the same month, Plaintiff received epidural steroid injections (Tr. 246). In August, 2009, Dr. Ashok noted that Plaintiff had been prescribed Valium, Ultram, and Percocet for ongoing back pain (Tr. 239). Dr. Ashok stated that he would no longer prescribe opiates (Tr. 262). In September, 2009, Plaintiff sought emergency treatment for continuing severe lumbar back pain on two occasions (Tr. 232, 235). Treating notes state that he exhibited an appropriate affect (Tr. 233). He received a prescription for oxycondone (Tr. 233, 236). The following month, he again received epidural steroid injections (Tr. 614). Plaintiff rating his pain as a level "five," noting that he would be unable to work until his pain was reduced to a "two" (Tr. 623).

In November, 2009, neurosurgeon Mark H. Falahee, M.D. performed a laminectomy without complications (Tr. 264, 346-347, 354-355). Post-surgical imaging studies show good alignment (Tr. 309, 338, 354-355). Imaging studies showed mild disc bulges without nerve root involvement (Tr. 626-627). Treating notes from December, 2009 state that Plaintiff exhibited 5/5 strength in all muscle groups (Tr. 305).

In January, 2010, Dr Falahee's notes state that Plaintiff was readmitted for a wound debridement procedure after developing an infection at the incision site (Tr. 343). Plaintiff reported that he strained his back while lifting a grandchild (Tr. 329, 343). The second surgery was performed with complications (Tr. 340-342). In February, 2010, Plaintiff was diagnosed with severe sleep apnea (Tr. 479). Plaintiff showed a good response to a CPAP device (Tr. 481). April, 2010 treating notes by Rajasekhar Jagarlamudi, M.D. state that Plaintiff developed a staph infection following the January, 2010 surgery (Tr. 534-538). Dr.

Jagarlamudi advised Plaintiff to continue a "prolonged course" of antibiotics (Tr. 534). The same month, Plaintiff received inpatient treatment for opiate dependence (Tr. 566). Treating staff noted a previous diagnosis of bipolar disorder (Tr. 655). Plaintiff denied physical concerns (Tr. 657, 659). He was discharged in stable condition after 10 days (Tr. 566).

In May, 2010, treating physician Brian J. Brophy, M.D. composed a letter on behalf of Plaintiff's disability claim, noting a medical history of back problems, substance abuse, and bipolar disorder (Tr. 703). He opined that Plaintiff would "unlikely be able to work in a setting such as a construction worker where he would apt to have significant flare-ups of his back pain" (Tr. 703). Dr. Brophy noted that substance abuse and bipolar disorder created "significant" work related limitations (Tr. 703). In September, 2010, Dr. Falahee noted that in regard to physical issues, Plaintiff was "making a concerted effort to get better" (Tr. 784).

In January, 2011, Dr. Falahee examined Plaintiff, noting full muscle strength in all extremities (Tr. 706). He noted that Plaintiff was in "an upbeat mood" and reported only occasional "aches and pains" (Tr. 706). Dr. Falahee limited Plaintiff to 50 pounds liftng and "no greater than 30 to 35 pounds on a repetitive basis" (Tr. 706). The following month, Robert A. Breakey, M.D. began treating Plaintiff (Tr. 711). Dr. Breakey recommended "age and condition-appropriate exercise" (Tr. 711). He noted "no unusual anxiety or evidence of depression (Tr. 713). In March, 2011, Plaintiff sought emergency treatment for back pain after lifting sand bags (Tr. 726). Plaintiff requested pain medication to be administered at the hospital only and declined an offer of additional pain medication (Tr. 726-727). The

same month, Dr. Falahee reiterated that Plaintiff could lift up to 50 pounds (Tr. 777). He found that Plaintiff was unable to perform overhead work (Tr. 777).

The following month, psychiatrist Thomas Zelnik, M.D. stated that his information of Plaintiff was limited to "a single psychiatric consultation" (Tr. 731). Nonetheless, he opined that Plaintiff "may well have a long term and moderately severe bipolar disorder" characterized by depression, irritability, and energetic episodes (Tr. 731). He opined that the disorder was manifested through drug addiction and social and occupational problems (Tr. 731). He added that Plaintiff faced "formidable challenges to sustained recovery" (Tr. 732). Dr. Zelnik's notes from the following month questioned whether Plaintiff's depression was due to the "situational stressors" of debt, "legal disputes about disability," and "lack of a meaningful occupation" (Tr. 768). Dr. Zelnik's June, 2011 notes state that Plaintiff experienced improved sleep hygiene following a medication change (Tr. 765). Noting a recent diagnosis of hypothyroidism, Dr. Zelnik noted that "it will be important to see if any aspects of . . . 'depression' improve[]" (Tr. 762).

Dr. Breakey's June, 2011 treating notes state that Plaintiff reported swelling hands and feet, and "mood swings" without suicidal ideation (Tr. 751-752). Lab results from the same month were positive for hypothyroidism (Tr. 742). June, 2011, Steven Harwood, M.D. found that Plaintiff could walk only one to two city blocks and sit or stand for 30 minutes at a time (Tr. 793). He found that Plaintiff required a sit/stand/walk option (Tr. 794). He precluded Plaintiff from all crouching and climbing of ladders (Tr. 795). He limited twisting, stooping, and climbing stairs to a "rare" basis (Tr. 795).

The following month, Dr. Zelnik completed a mental impairment questionnaire, noting that Plaintiff was "chronically depressed" and had an opiate dependence (Tr. 800). He found that Plaintiff had "no useful ability to function" in completing a workweek without psychologically based symptoms; maintaining pace; interacting appropriately with coworkers and supervisors; responding appropriately to change; dealing with stress; and understanding and carrying out complex instructions (Tr. 802-803). He referred to Plaintiff's inability to "get along with bosses and peers" at "numerous jobs" (Tr. 803). He found that Plaintiff had experienced "four or more" episodes of decompensation in past 12 months (Tr. 804). He found Plaintiff's prognosis for work "very poor" due to a combination of bipolar disorder, impulse control problems, chronic back pain, and opiate dependence (Tr. 806).

## 2. Consultative and Non-Treating Records

In March, 2010, Sharon Ridella-Mehlos, Ph.D. performed a consultative psychological examination on behalf of the SSA, noting Plaintiff's report that he no longer hunted or fished following the July, 2009 accident (Tr. 424). Plaintiff reported that he arose early and tried to walk a mile each day (Tr. 424). Dr. Ridella-Mehlos observed that Plaintiff presented with low self esteem, an angry affect, and walked with a limp (Tr. 425). Plaintiff reported that psychotropic medication quelled his angry moods (Tr. 425). Dr. Ridella-Mehlos found that Plaintiff was capable of making simple work related decisions (Tr. 426). She assigned him a GAF of 50[2] with a fair to good prognosis (Tr. 426-427).

---

[2]A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. *DSM–IV–TR*

The same month, Michael H. Dawson, M.D. performed an independent consultative examination of Plaintiff on behalf of the claim for benefits, noting Plaintiff's report of level "5" pain at rest and level "7" pain with activity (Tr. 630). Dr. Dawson noted a diagnosis of bipolar disorder (Tr. 631). Plaintiff denied alcohol use but admitted to occasional marijuana use (Tr. 631). Dr. Dawson noted normal strength in the lower extremities (Tr. 631). He found that Plaintiff had "not yet achieved solid fusion" (Tr. 631). He found that even "after the fusion is solid," Plaintiff "will probably need permanent restrictions of no lifting greater [than] 15-20 pounds and no repetitive lifting or bending" (Tr. 631).

The following month, Daniel Blake, Ph.D. completed a Psychiatric Review Technique of Plaintiff's records on behalf of the SSA, finding the presence of an affective disorder (bipolar disorder) (Tr. 548, 551). Under the "'B' Criteria," he found the presence of mild restriction in activities of daily living and social functioning, and moderate difficulties in maintaining concentration, persistence, and pace (Tr. 558). Dr. Blake found that Plaintiff could "understand and follow simple directions" and "make simple job-related decisions" (Tr. 560). Dr. Blake also completed a Physical Residual Functional Capacity Assessment, finding moderate limitation in understanding, remembering, and carrying out detailed instructions; maintaining attention for extended periods; completing a normal work week without psychologically based symptoms, interacting appropriately with the general public, accepting criticism, responding appropriately to workplace changes, and setting realistic

---

at 34.

goals (Tr. 563). Dr. Blake reiterated that Plaintiff could perform "sustained simple work activity" (Tr. 564).

In May, 2010, Muhammad Mian, M.D. performed a Physical Residual Functional Capacity Assessment on behalf of the SSA, finding that Plaintiff could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for about six hours in an eight-hour workday; and push and pull without limitation (Tr. 584). Dr. Mian found that Plaintiff was limited to occasional stooping but could perform all other postural activity on a frequent basis (Tr. 585). Dr. Mian noted that Plaintiff's alleged limitation did not prevent him from caring for himself, making simple meals, using, the computer, and shopping (Tr. 588).

### C. Vocational Expert Testimony

VE Diane Regan classified Plaintiff's former work as a mason as skilled at the medium exertional level[3] (Tr. 76). The ALJ then posed the following question to the VE, taking into account Plaintiff's age, education and work experience:

> [A]ssume . . . a person . . . who is able to perform at not more than the light exertional level with the following limitations. The person can climb ladders, ropes or scaffolds not more than frequently. The person can climb ramps or stairs not more than frequently, same with balancing, crouching and crawling. The person cannot perform any kneeling and can perform no more than

---

[3]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

>occasional stooping. In addition, the person is limited to occupations that don't require any complex written or verbal communication. They're limited to unskilled work and work that involves simple, routine, repetitive tasks. Also, the person must be employed in a low stress job, defined as having no more than occasional decision making, no more than occasional changes in the work setting, and no more than occasional supervision. With those limitations, could such a person perform Mr. Tyler's past work? (Tr. 77).

The VE replied that given the above limitations, the individual would be unable to perform Plaintiff's former job but could work as a small product assembler (8,000 positions in southeast Michigan) (Tr. 76-78). The VE stated that if the same individual were limited to exertionally light work, *occasional* rather than frequent postural activity, a "sit/stand" option, occasional interaction with the public and coworkers, and "no tandem tasks," the job numbers (cited above) would be reduced by 50 percent (Tr. 78). The VE testified that if the same individual were also limited by the need to avoid extreme heat, dangerous machinery, and unprotected heights, and additionally, were precluded from all production work, the job numbers would remain unchanged (Tr. 78). If the same individual were limited to sedentary work and only "partial extended reaching on a frequent basis," he would be able to perform the work of a sorter (1,500) and bench assembler (1,500)(Tr. 79). The VE testified that the need to be absent "up to four times" a month would preclude all work (Tr. 79).

In response to questioning by Plaintiff's counsel, the VE testified that the need for five-minute breaks every hour would not interfere with job duties but the need for 10-minute breaks would preclude all employment (Tr. 80).

### D. The ALJ's Decision

Citing the medical records, the ALJ found that Plaintiff experienced the severe impairments of degenerative disc disease "status/post laminectomy and discectomy," degenerative arthritis, edema of bilateral ankles, depression, bipolar disorder, substance abuse disorder, obstructive sleep apnea, and a learning disorder but that none of the conditions met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 26, 28). He found mild restrictions in activities of daily living and social functioning and moderate deficiencies in concentration, persistence, or pace (Tr. 29-30). The ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") for light work with the following limitations:

> [C]laimant can lift up to 10 pounds occasionally, he can stand/walk for about two hours in an eight hour workday and he can sit for about six hours in an eight hour workday, with normal breaks. The claimant requires a sit/stand option, that is, he can perform work that allows him to sit or stand alternatively at will provided that he is not off task more than 10 percent of the workday. He cannot do more than occasionally climb ladders, ropes, scaffolds, ramps or stairs. He cannot do more than occasionally balance, stoop, crouch, or crawl. He can never kneel. He can perform no more than frequent partially extended, that is, not fully extended reaching with the upper extremities. He could reach out in front with his elbows bent. He must avoid concentrated exposure to extreme heat and to hazards like dangerous machinery and unprotected heights. The claimant is limited to unskilled occupations that do not require complex written or verbal communication, but allows for simple, routine, repetitive tasks. The claimant must be imployed in a low-stress job defined as requiring no more than occasional decision-making and having no more than occasional changes in the work setting. He must work where there is no production rate or production pace, and he should have no more than occasional supervision and occasional interaction with the public and with co-workers (and no tandem tasks) (Tr. 31-32).

The ALJ determined that while Plaintiff was unable to perform any of his past relevant work, he could work as a cloth-stock sorter and an assembler (Tr. 41-42).

-12-

The ALJ discounted the allegations of disability, citing Dr. Fahalee's January, 2011 records stating that Plaintiff was "doing very well" and Plaintiff's post-surgical statements that the pain was well controlled (Tr. 40). The ALJ accorded little weight to Dr. Zelnick's April, 2011 opinion, noting that the treating psychiatrist appeared to have "uncritically accepted" Plaintiff's allegations of limitation (Tr. 31, 38). The ALJ found that Dr. Zelnick's findings were undermined by other record evidence (Tr. 38).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less than a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245

(6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. The Treating Physician Analysis

Plaintiff disputes the ALJ's rejection of Dr. Zelnik's July, 2011 disability opinion. *Plaintiff's Brief* at 16-20, *Docket #12* (citing Tr. 31, 35, 800-806). He also contends that the ALJ failed to provide "good reasons" for discounting the treating psychiatrist's opinion as

required by 20 C.F.R. § 404.1527(c)(2). *Id.*

### 1. Applicable Law

An opinion of limitation or disability by a treating source is entitled to deference. "[I]f the opinion of the claimant's treating physician is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue,* 573 F. 3d 263, 266 (6th Cir. 2009)(internal quotation marks omitted)(*citing Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir. 2004). Further,

> [i]f the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors--namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source--in determining what weight to give the opinion.

*Wilson,* at 544 (citing 20 C.F.R. 404.1527(c)(2-6)).

The failure to provide "good reasons" for rejecting a treating physician's opinion constitutes reversible error. *Gayheart v. Commisioner of Social Security,* 710 F. 3d 365, 376 (6th Cir. 2013)(citing *Wilson,* at 544-446). "[T]he Commissioner imposes on its decision-makers a clear duty to 'always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion.'" *Cole v. Astrue* 661 F.3d 931, 937 (6th Cir.2011); § 404.1527(c)(2). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that

weight.'" *Gayheart,* at 376 (citing SSR 96-2p, 1996 WL 374188, *5 (1996)).

### 2. Application to the Present Case

As to Dr. Zelnik's July, 2011 opinion of extreme limitation and four or more episodes of decompensation in the past 12 months, the ALJ found as follows:

> I give these opinions little weight because he failed to provide specific explanations to justify his extreme opinions. Further, Dr. Zelnik stated in a letter to the claimant's representative, dated April 11, 2011, that he wanted to assist Mr. Tyler with regard to his claim for Social Security benefits (Tr. 31).

The ALJ also noted that the substantial contrast between Dr. Zelnik's extreme findings and the rest of the treating transcript created an inference that the Dr. Zelnik's July, 2011 findings were made "in an effort to assist a patient with whom he sympathizes" (Tr. 31). The ALJ cited Dr. Zelnik's acknowledgment that the Plaintiff's opiate dependence had been managed with suboxone treatment (Tr. 35).

My own review of the record supports the ALJ's conclusion that Dr Zelnik's July, 2011 assessment contrasted with other evidence reflecting a lesser degree of limitation. In the presence of contradicting substantial evidence, an ALJ may reject all or a portion of the treating source's findings. *Warner v. Commissioner of Social Sec.,* 375 F.3d 387, 391-392 (6th Cir.2004). Citing *Hensley, supra* 573 F. 3d at 266, Plaintiff points out that a treating opinion cannot be rejected on the sole basis that the opinion was contradicted by a non-treating source. *Plaintiff's Brief* at 16. However here, the ALJ noted that diverse portions of both the treating and non-treating records stood at odds with Dr. Zelnik's findings of extreme psychological limitation.

As noted by the ALJ, Dr. Falahee found Plaintiff in "an upbeat mood" at a January, 2011 examination (Tr. 706). The following month, Dr. Breakey noted "no unusual anxiety or evidence of depression" (Tr. 713). Dr. Zelnik's own treating notes do not support his July, 2011 opinion of extreme limitation. Only days before completing the disability assessment, he noted that Plaintiff had "started thyroid replacement, and it will be important to see if any aspect of what he has historically attributed to 'depression' improves" (Tr. 762). He noted "unclear reasons" for Plaintiff's alleged social and occupational difficulties (Tr. 762). Dr. Zelnik appears to have questioned whether Plaintiff's depression was due to the "situational stressors" of debt, "legal disputes about disability," and "lack of a meaningful occupation" or an ongoing condition (Tr. 768).

Plaintiff faults the ALJ for citing Dr. Zelnik's April, 2011 letter to Plaintiff's attorney stating that he "would like to be of some assistance to you . . . with regard to [the] claim for Social Security Disability Benefits" (Tr. 731). However, the ALJ's inference that treating relationship was "agenda driven" from the beginning of the five-month relationship is not unreasonable (Tr. 31). The ALJ noted that Plaintiff's self described daily activities (walking, housework, reading, online interactions, and AA activity) stood at odds with the finding that he was disabled as a result of a mental disorder (Tr. 39-40). The ALJ also pointed out that the alleged July, 2009 disability was precipitated by a back injury rather than a psychological condition (Tr. 40). She noted that prior to the July, 2009 accident, Plaintiff had been able to work despite the alleged psychological limitations (Tr. 40). Because the rejection of Dr. Zelnik's opinion is well supported and explained, remand on this basis is not warranted.

### B.  The Job Findings

Plaintiff also argues that substantial evidence does not support the ALJ's Step Five determination.  *Plaintiff's Brief* at 17-18.  He notes that the administrative finding that he could work as a "cloth-stock sorter," (Tr. 42) does not comport with the VE's testimony that he could work as a "sorter" (Tr. 79 citing Dictionary of Occupation Titles ("DOT") no. 789.687-034).

The ALJ's "error" does not warrant remand.  First, the DOT code cited by the VE ( no. 789.687-034) is actually listed in the DOT as "cloth-stock sorter."  http://www.occupationalinfo.org/78/789687034.html (last visited February 17, 2014).  As such, the ALJ's finding that Plaintiff could work as a cloth-stock sorter was consistent with the VE's job testimony.  The ALJ erred only by accompanying his finding with the "incorrect " DOT no. of 521.687-086, which is the code for "nut sorter" (Tr. 42); http://www.occupationalinfo.org/52/521687086.html (last visited February 17, 2014).

Even assuming that the ALJ's misstatement of the job code for the sorter position invalidated that portion of the Step Five findings, Plaintiff does not assign error to the finding that he could also work as an assembler (Tr. 42).  Citing the VE's findings, the ALJ found that 1,500 assembler positions existed in the region of southeastern Michigan (Tr. 76, 79).  Those 1,500 jobs, standing alone, constitute a "significant" number for purposes of a Step Five finding.  *See Born v. Secretary of Health & Human Services*, 923 F.2d 1168, 1174 (6th Cir.1990)(citing *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir.1988))(1,350 jobs in the local economy constitute a significant number); *Martin v. Commissioner of Social Security*, 170

-18-

Fed.Appx. 369, 375, 2006 WL 509393, *5 (6th Cir. March 1, 2006)(870 jobs in the claimant's geographic region a significant number).

In closing, my recommendation to uphold the Commissioner's decision should not be read to trivialize Plaintiff's health conditions or strides he has made in the quest to permanently overcome substance abuse. Nonetheless, the ALJ's determination was well within the "zone of choice" accorded the administrative fact-finder and as such, should remain undisturbed. *Mullen, supra.*

## CONCLUSION

For the reasons stated above, I recommend that Defendant's motion for summary judgment be GRANTED and that Plaintiff's motion for summary judgment be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D.

Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


February 19, 2014                               s/R. Steven Whalen
                                                R. STEVEN WHALEN
                                                UNITED STATES MAGISTRATE JUDGE



I hereby certify that a copy of the foregoing document was sent to parties of record on February 19, 2014, electronically and/or by U.S. mail.


                                                s/Michael Williams
                                                Case Manager to the
                                                Honorable R. Steven Whalen